Reade, J.
 

 We have not to consider this as an application for a common injunction to stay proceedings at law, where the rights of the parties have been passed on, and where the continuance of the injunction depends upon
 
 equity confessed in the answer.
 
 But this is an injunction of a
 
 special nature,
 
 and does not stand upon tire equity confessed in the answer, but upon the probability of the complainant’s right to relief upon the final hearing, and the irreparable loss which may result. And these probabilities are to be collected from the whole case, i. e., the bill, answer and affidavits. The distinction is so fully explained in
 
 Capehart
 
 v.
 
 Mhoon,
 
 Bus. Eq., 30, and in
 
 Heath
 
 v.
 
 Lloyd, ibid,
 
 39, that it is unnecessary to elaborate it.
 

 The bill states that the plaintiff is old and ignorant, and that ho gave in his credits for taxation under the Confederate Government at $3,000. That the defendant Dobson was the assessor to whom he gave in his list; that his credits really amounted to seven or eight thousand dollars, and that the defendants conspired to alarm the complainant
 
 *172
 
 with the danger of his being arrested, imprisoned and whipped ; and advised him to sell his credits to them at what he had given them in, and that this would show that he did not think them worth more; that under the influence of the alarm thus caused, he did sell to the defendant Dobson the whole of his credits for $3,000, and took Dobson’s bond with security, for that sum. Such a transaction, supposing it to be true, would be a gross fraud, aggravated by the fact that the defendant Dobson was a sworn officer of the government, and a confidential friend of the complainant.
 

 But the defendants do not admit the statements in the bill. They do admit, that the defendant Dobson did buy the complainant’s credits at $3,000, and that the defendant R. E. Reeves subsequently took half of the purchase. But they deny all fraud in the transaction; and it is just to them that their statement should be heard.
 

 From the answer of Dobson the following facts appear: After he took the complainant’s list he told him that there was a complaint in the country about his having made a false return, and that at court he heard one man very boisterous and abusive of him, and that
 
 he
 
 would bo astonished to hear the name of one gentleman who was abusing him. The complainant asked him what ivas to be done, and he told him that it must be arbitrated; that each must choose a man. Complainant told him to settle it himself. He declined, saying it must be done by freeholders. Complainant insisted that he and the defendant Worth should do it. He then consented, and made an appointment to meet at complainant’s house. At the meeting the complainant hesitated to produce his papers, but he told him it must be done. Complainant subsequently exhibited his papers, and he (Dobson) and Worth made the calculation, and found them to amount to upwards of $4,200. He then went out into the yard and had a talk with complainant’s wife, who asked him how it came out, and he replied, “ it comes out more
 
 *173
 
 than he gave in.” At which she seemed to be concerned, and asked him to talk to her husband and fix it right. She brought her husband out, and Dobson had a talk with him, and made the trade and agreed to have it all fixed right with the tax collector. That his and Eeeves’ debts amounted to $2,000, the whole of the solvent debts to upwards of $3,800, and the doubtful and bad debts to upwards of $1600.
 

 Now, when to the defendant’s own statement it be added, what is fairly inferable from the whole case, that the complainant was old, ignorant and alarmed; his wife alarmed; Dobson
 
 his friend,
 
 who yielded to complainant’s solicitation to act as his counsellor, and settle the matter just as he pleased, so anxious was he to be relieved from the difficulty; that the credits were “old debts,” subject to no scale of depreciation, and of much larger amount than the defendant’s bond, given to secure the price of $3000, which may be subject to the scale, (but we do not decide that question,); that the defendant Dobson was an officer of the government and bound to do equal justice between the ■citizen and the government. When all this is considered, it may be that but little evidence would be required to invalidate the transaction. The defendant Dobson denies that he intended to alarm the complainant. It is very certain that heylid alarm both the complainant and his wife, and that he knew they were alarmed at the time he made the trade. He also denies that he deceived him as to the amount of the credits, and yet he admits that he stated the amount to be $4,200, whereas the list which he renders with his answer amounts to some $5,500. The defendants deny that they are insolvent, yet they have been owing the complainant eight or ten years, and have made no payment upon their $3,000 bond, although it has been given nearly two years, and they make no exhibit of their means and offer no evidence of their solvency, other than their own statement. If they were allowed to collect the complainant’s
 
 *174
 
 credits, and should prove to bo insolvent, his loss would be-irreparable.
 

 We have sought in vain, in the answer of Dobson, for anything to relieve the transaction from the strong suspicion which is excited by the statements of the bill. And that portion of the answer especially, where he grows facetious and describes the perplexities of the old man (the complainant) when he was at his house to make out the list,, how loth to show his papers, how he smoked his pipe, how he made “a good hand” at his dinner, how he smoked his-pipe again, how much the old lady was concerned, and how placid he was himself the while, would better describe the-sharper and his prey than the intercourse of neighbors and friends, or of an official and a citizen. And it strongly impresses upon us the propriety of the wholesome restraint of continuing the injunction until the hearing.
 

 The 4th exception to the answer of Dobson, and the 3rd exception to the answer of R. E. Reeves, are sustained. The other exceptions are overruled. The order dissolving- the injunction is overruled, and the injunction is continued until the hearing, with leave to either party to apply for a receiver.
 

 Per Curiam.
 

 Decree accordingly.